1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JIMMY LEE TOLLISON,

              Plaintiff,

       vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. SACV 14-504 RNB

ORDER REVERSING DECISION OF
COMMISSIONER AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS

      The Court now rules as follows with respect to the two disputed issues listed in the Joint Stipulation.[1]

//

---

[1]     As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the administrative record ("AR"), and the Joint Stipulation ("Jt Stip") filed by the parties.  In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

**A.   The ALJ failed to make a proper adverse credibility determination (Disputed Issue Two).**

Disputed Issue Two is directed to the ALJ's adverse credibility determination with respect to plaintiff's subjective symptom testimony. (See Jt Stip at 20-31.)

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Here, since the Commissioner has not argued that there was evidence of malingering or that a lesser standard consequently should apply, the Court will apply the "clear and convincing" standard to the ALJ's adverse credibility determination. See Burrell v. Colvin, - F.3d -, 2014 WL 7398892, at *2 and n.1 (9th Cir. Dec. 31, 2014) (applying "clear and convincing" standard where the government did not argue that a lesser standard should apply based on evidence of malingering); see also Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014) (same).

Here, plaintiff testified that he cannot work primarily because of pain in his lower back, which he has experienced since his back surgery in 2000. (See 1 AR 54; see also 2 AR 1117-18.) Plaintiff testified that on account of his condition, he is "mostly bedridden," cannot walk straight, can stand for 5-15 minutes at a time, and can lift 25-30 pounds. (See 1 AR 59, 60, 68.) Plaintiff also testified that he has a driver's license without any restrictions. (See 1 AR 53.) Plaintiff also testified that

1  on typical days, he can fix his own meals, take care of his personal hygiene, fix
2  things, water the lawn, wash his own dishes, do laundry, vacuum at a slower-than-
3  usual pace, and watch television. (See 1 AR 56-59.) In addition to testifying at the
4  administrative hearing, plaintiff completed an Adult Function Report in which he
5  stated that he can handle his own money. (See 1 AR 211-12.)

6      The ALJ determined that although plaintiff's medically determinable
7  impairments could reasonably be expected to cause the alleged symptoms, plaintiff's
8  statements concerning the intensity, persistence, and limiting effects of these
9  symptoms were not credible to the extent they were inconsistent with the ALJ's RFC
10 assessment. (See 1 AR 36.) In support of this adverse credibility determination, the
11 ALJ proffered what appear to be six reasons. (See 1 AR 35-36.) The Court finds that
12 the first five reasons were not legally sufficient and that, while the sixth reason
13 arguably was legally sufficient, the ALJ's adverse credibility determination on the
14 whole was not supported by substantial evidence.

15     One of the ALJ's stated reasons for his adverse credibility determination was
16 that plaintiff's allegations were "inconsistent with the objective medical evidence,
17 which indicates an attempt by [plaintiff] to exaggerate the severity of his symptoms,"
18 and that plaintiff "has not generally received the type of medical treatment one would
19 expect for a totally disabled individual." (See 1 AR 35.) However, this vague
20 allegation is legally insufficient because the ALJ failed to identify specific evidence
21 that undermined plaintiff's complaints by demonstrating inconsistencies with the
22 objective medical record, an attempt to exaggerate the severity of his symptoms, or
23 treatment that was inconsistent with disability. See Treichler v. Commissioner of
24 Social Sec. Admin., - F.3d -, 2014 WL 7332774, at *9 (9th Cir. Dec. 24, 2014) ("An
25 ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the
26 objective medical evidence,' without any 'specific findings in support' of that
27 conclusion is insufficient for our review."); see also Parra v. Astrue, 481 F.3d 742,
28 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject

a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).[2]

A similar reason proffered by the ALJ for his adverse credibility determination was that plaintiff "exaggerated his limitations and alluded to various medical conditions" for which there was no objective support.  It thus appeared that plaintiff "might be exaggerating his conditions and symptoms." (See 1 AR 36.) However, the ALJ failed to explain how plaintiff exaggerated his symptoms, failed to specify what unsupported medical conditions he had alleged, and failed to cite any supporting evidence for this reasoning.

A similar reason proffered by the ALJ for his adverse credibility determination was that plaintiff "appeared to make excuses for why he could not look for work or be hired, rather than providing medical reasons why he could not perform work." (See 1 AR 36.)  However, the ALJ failed to specify what excuses plaintiff proffered in lieu of medical reasons, and failed to cite any supporting evidence.

Another reason proffered by the ALJ for his adverse credibility determination

---

[2]      Although the Commissioner cites findings made by the ALJ in other portions of his opinion that purportedly support this part of his adverse credibility determination (see Jt Stip 25-27), the ALJ did not specifically link these findings to his adverse credibility determination. Accordingly, the Court does not consider them as part of that determination. See Burrell, 2014 WL 7398892, at *4-*5 (rejecting link between ALJ's findings about medical record and adverse credibility determination elsewhere in the opinion where the ALJ "never stated that he rested his adverse credibility determination on those findings" and "did not make a specific finding linking a lack of medical records to Claimant's testimony"); Gonzalez v. Sullivan, 914 F.2d 1197, 1201-02 (9th Cir. 1990) (rejecting link between ALJ's finding of possibly adverse evidence and adverse credibility determination in other portion of decision where ALJ did not "specifically link" the evidence to his conclusion that claimant's excess pain testimony lacked credibility); see also Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009) (declining to attribute ALJ's discussion of physicians' opinions to adverse credibility determination in other portion of ALJ's decision).

4

1  was that plaintiff had been prescribed Diazepam, Temazepam, Methadone, and
2  Percocet for his impairments and had suffered no side effects.  The ALJ also found
3  that plaintiff had acknowledged that his treatment was effective in controlling his
4  symptoms because he had testified that he received relief from back pain with
5  medication, heat, and lying down.  (See 1 AR 36; see also 1 AR 62, 64.)  As an initial
6  matter, the absence of side effects did not mean the absence of symptoms.  Moreover,
7  the record does not reflect that plaintiff acknowledged that his treatment was
8  effective; to the contrary, plaintiff testified that despite any temporary relief he
9  received from medication, heat, and lying down, he was still "mostly bedridden" and
10 could not walk or stand for long periods.  (See 1 AR 59, 60.)

11       Another reason proffered by the ALJ for his adverse credibility determination
12 was that plaintiff engaged in a "somewhat normal level of daily activity" – fixing his
13 own meals, taking care of his personal hygiene, fixing things, watering the lawn,
14 washing his own dishes, doing laundry, walking around the block, watching
15 television, vacuuming at a slower-than-usual pace – and had an unrestricted driver's
16 license and the ability to handle money.  The ALJ found that these activities
17 resembled the skills and activities necessary for obtaining and maintaining
18 employment.  (See 1 AR 35-36.)  As an initial matter, the ALJ improperly relied on
19 this evidence because the full context of plaintiff's statements about his daily
20 activities reflected that plaintiff performed them at a slow pace, for only short periods,
21 and with rest and assistance (see 1 AR 56-58, 208, 210-11).  See Ghanim, 763 F.3d
22 at 1165 (ALJ improperly relied on evidence of claimant's daily activities for adverse
23 credibility determination where claimant stated she performed only limited activities,
24 sometimes with help); Reddick v. Chater, 157 F.3d 715, 722-23 and n.1 (9th Cir.
25 1998) (same where ALJ did not properly consider claimant's statements about her
26 daily activities in full context, which indicated claimant performed them with
27 weakness and fatigue, requiring periodic rest).  Moreover, evidence that plaintiff
28 performed household activities on this limited basis does not convince the Court that

1  plaintiff engaged in activities that resembled those necessary for employment.  See
2  Vertigan v. Halter, 260 F.3d 1044, 1049-50 (9th Cir. 2001) (concluding that evidence
3  that claimant did certain chores that did not consume a substantial part of the day did
4  not detract from her credibility); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)
5  (claimant's ability to assist with some household chores was not determinative of
6  disability).

7       Another reason proffered by the ALJ for his adverse credibility determination
8  was that the record reflected that plaintiff had engaged in work activity during the
9  period between his alleged disability onset date of June 15, 2009 and approximately
10  October 2009.  (See 1 AR 35; see also 1 AR 537.)  In general, such evidence could
11  constitute a legally sufficient reason on which an ALJ properly could rely in support
12  of an adverse credibility determination. See Bray v. Commissioner of Social Security
13  Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (claimant's part-time work as personal
14  caregiver belied claimant's claim of debilitating respiratory illness).  The Court also
15  notes that the record corroborates the ALJ's finding that plaintiff worked for a few
16  months after his alleged disability onset date.  Nonetheless, this rationale is less
17  convincing here because the work period was brief and a treating physician noted that
18  plaintiff had stopped working because of "poorly controlled pain."  (See 1 AR 66,
19  537.)  Moreover, even if this reason arguably was valid, it is still a weak reason based
20  on this record and therefore fails to satisfy the ALJ's duty to provide reasons under
21  the "clear and convincing" standard.  See Burrell, 2014 WL 7398892, at *5 (reason
22  that arguably was legally sufficient basis for adverse credibility determination but
23  nonetheless was "weak on this record" was insufficient to satisfy ALJ's duty to
24  provide "specific, clear and convincing" reasons) (citing Lingenfelter v. Astrue, 504
25  F.3d 1028, 1035 (9th Cir. 2007) (ALJ's conclusion cannot be affirmed "simply by
26  isolating a specific quantum of supporting evidence")).

27       In sum, the Court finds that, since the ALJ's initial five reasons were legally
28  insufficient and his sixth reason was only weakly supported, the ALJ erred in

discrediting plaintiff's subjective symptom testimony.   See Burrell, 2014 WL 7398892, at *5 (ALJ erred in discrediting claimant's testimony where initial two reasons were not supported by substantial evidence and final reason was weak on the record).

## B.   The ALJ failed to properly consider the treating physician's opinions (Disputed Issue One).

Disputed Issue One is directed to the ALJ's consideration of the opinions of Dr. Helm, plaintiff's treating physician.  (See Jt Stip at 5-19.)

The law is well established in this Circuit that a treating physician's opinions are entitled to special weight because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual.   See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).  "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability."   Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.   See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons.   See Lester, 81 F.3d at 830; Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991).   Where, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.  See, e.g., Reddick, 157 F.3d at 725 ("A treating physician's opinion on disability, even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record."); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

//

7

1   Dr. Helm treated plaintiff for lower back pain beginning in February 2008 and
2   issued two opinions, both of which the ALJ rejected.  (See 1 AR 39, 442; 2 AR 738.)
3   The Court finds that the ALJ failed to provide legally sufficient reasons to reject these
4   opinions.

5

6         1.    Dr. Helm's September 2009/March 2010 opinion

7   Dr. Helm issued an opinion in September 2009 (and certified it in March 2010)
8   for purposes of plaintiff's state disability claim.  (See 2 AR 730-38.)  In the opinion,
9   Dr. Helm concluded that plaintiff was "unable to perform regular or customary work."
10  (See 2 AR 730, 738.)  The ALJ accorded "little weight" to this opinion for three
11  reasons.

12  First, the ALJ found that Dr. Helm's opinion was "brief, conclusory, and
13  inadequately supported by objective findings and the overall treatment records.
14  Specifically, the ALJ noted that a CT scan of plaintiff's lumbar spine showed
15  evidence of posterior lumbar interbody fusion but no other abnormalities.  (See 1 AR
16  39; see also 1 AR 439-40.)  This reason was legally insufficient because, to the
17  contrary, the record reflects that the CT scan, from July 2009, showed also that the
18  soft tissue structures in and around the spine were suboptimal and that further
19  imaging was necessary to evaluate soft tissue causes of neural impingement.  (See 1
20  AR 440.)  A subsequent CT scan of plaintiff's lumbar spine, from July 2012, showed
21  a laminectomy defect at S1, marked irregularity and sclerosis involving the endplates
22  at S1-S2, variable degenerative changes, spondylosis, and neural foraminal
23  narrowing. (See 2 AR 1096-97.)

24  Second, the ALJ found that plaintiff had been treated conservatively with
25  prescription medications and that this treatment plan was effective.  (See 1 AR 39.)
26  In general, an ALJ may properly reject a treating physician's opinion that a claimant
27  was disabled where the physician had prescribed a conservative course of treatment.
28  See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).  Here, however, the ALJ

failed to explain why plaintiff's treatment was conservative and failed to adduce evidence that the treatment plan was effective.  Moreover, the record reflects that plaintiff was regularly prescribed various pain medications – Diazepam (Valium), Temazepam, Methadone, Percocet, Oxycontin, Norco, Trazodone (see 1 AR 64; 2 AR 731, 913) – that in the Court's view cannot properly be characterized as conservative treatment.  See Kager v. Astrue, 256 Fed. Appx. 919, 923 (9th Cir. 2007) (now citable for its persuasive value per Ninth Circuit Rule 36-3) (rejecting adverse credibility determination premised on absence of significant pain therapy where claimant took prescription pain medications including Methocarbomal and the narcotic analgesics Roxicet and Valium); cf. Osenbrock v. Apfel, 240 F.3d 1157, 1166 (9th Cir. 2001) (treatment corroborating allegations of severe and unremitting pain may include a strong Codeine or Morphine basic analgesic).

Third, the ALJ noted that the "regular or customary work" standard used by Dr. Helm was not the same standard used by the Social Security Administration and that just because plaintiff could not return to his prior work did not mean he could not perform any other work.  (See 1 AR 39.)  However, the ALJ could not properly reject Dr. Helm's opinion merely because it arose out of a state disability proceeding, the opinion employed a different legal standard, and/or the opinion did not address whether plaintiff could perform any other work in the national economy.  See 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); see generally McLeod v. Astrue, 640 F.3d 881, 886 (9th Cir. 2011) (ALJ was required to consider VA rating of disability even though the VA and SSA criteria for determining disability are not identical).

### 2.   Dr. Helm's March 2011 opinion

In another report issued in March 2011 describing plaintiff's functional abilities from his back condition, Dr. Helm opined that plaintiff's back pain would limit him to sitting for three hours in a workday and standing/walking for two hours

1   in a workday, and would cause him to be absent from work more than three times per

2   month.  (See 2 AR 909-16.)   The ALJ construed these limitations as precluding

3   plaintiff from performing substantial gainful activity, and rejected Dr. Helm's opinion

4   as having "no probative value" for four reasons.  (See 2 AR 39.)

5       First, the ALJ found that Dr. Helm's opinion was not entitled to controlling

6   weight or any special significance because it concerned an issue (i.e., disability)

7   reserved to the Commissioner.  (See 1 AR 39.)   While the Court concurs that a

8   disability determination involves an issue reserved to the Commissioner, the ALJ still

9   could not reject Dr. Helm's opinion without proffering legally sufficient reasons,

10  especially because the opinion was based on objective medical evidence.  See Hill v.

11  Astrue, 698 F.3d 1153, 1160 (9th Cir. 2012) (ALJ was required to consider

12  physician's opinion that claimant was "unlikely" to work full time because it was an

13  assessment based on objective medical evidence); see also Reddick, 157 F.3d at 725

14  (ALJ must provide legally sufficient reasons to reject a treating physician's opinion

15  on the ultimate issue of disability).

16      Second, the ALJ found that Dr. Helm had apparently based his opinion "only

17  on [plaintiff's] self-reported statements of pain and limitations rather than on the

18  objective medical findings."  (See 1 AR 39.)   In general, an ALJ "may reject a

19  treating physician's opinion if it is based 'to a large extent' on a claimant's self-

20  reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533

21  F.3d 1035, 1041 (9th Cir. 2008) (citation omitted).  Here, however, the ALJ did not

22  properly discount plaintiff's self-reports as incredible.   See Burrell, 2014 WL

23  7399892, at *6 (ALJ could not properly reject treating physician's assessment as

24  reliant primarily on claimant's own subjective allegations where the ALJ failed to

25  properly discredit claimant's testimony).   Moreover, contrary to the ALJ's

26  supposition, the record reflects that Dr. Helm's opinion was not based to a large

27  extent on plaintiff's self-reports, but rather based primarily on objective clinical

28  observations: Dr. Helm stated that his opinion was based on a twelve-centimeter well-

healed scar on the lumbar spine midline, multiple imaging studies which had shown extensive surgical changes, decreased range of motion of the lumbar spine, and positive straight leg raising (see 2 AR 909-10).  See Ghanim, 763 F.3d at 1162 ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion.") (citing Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008)).

Third, the ALJ found that Dr. Helm's opinion was inconsistent with his own treatment records, which had documented conservative and effective treatment with prescription medication for plaintiff's back pain, been contradicted by a CT scan that showed no abnormalities, and failed to document any recommendation for surgery. (See 1 AR 39.)  However, as noted above, (a) the ALJ failed to explain or support his conclusion that plaintiff's treatment was conservative and effective, (b) the record indicates that plaintiff was regularly prescribed various prescription pain medications that cannot properly be characterized as conservative treatment, and (c) the CT scans showed various abnormalities.  Moreover, the absence of any recommendation for surgery was not particularly probative because plaintiff did have surgery (see 2 AR 1117-18) that failed to eliminate his pain and because there was no evidence before the ALJ that another surgery was an appropriate option.

Fourth, the ALJ found that Dr. Helm's opinion was inconsistent with plaintiff's admitted activities of daily living.  (See 1 AR 39.)  For the same reasons that the Court found that this was not a legally sufficient reason on which the ALJ could properly rely to support his adverse credibility determination, the Court finds that it also was not a legally sufficient reason to reject Dr. Helm's opinion.

## CONCLUSION AND ORDER

The law is well established that the decision whether to remand for further proceedings or simply to award benefits is within the discretion of the Court.  See, e.g., Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

888 F.2d 599, 603 (9th Cir. 1989); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).  Remand is warranted where additional administrative proceedings could remedy defects in the decision.  See, e.g., Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984); Lewin, 654 F.2d at 635.  Remand for the payment of benefits is appropriate where no useful purpose would be served by further administrative proceedings, Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980); where the record has been fully developed, Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); or where remand would unnecessarily delay the receipt of benefits, Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985).

The Court is mindful that recent Ninth Circuit cases have focused on the appropriate remedy in cases where, as here, an ALJ improperly discredits a claimant's testimony or a treating physician's opinions.  See Treichler, 2014 WL 7332774, at *8-*13; Burrell, 2014 WL 7398892, at *6-*7; Garrison v. Colvin, 759 F.3d 995, 1019-23 (9th Cir. 2014).  In Treichler, 2014 WL 7332774, at *7-*8,[3] the Ninth Circuit noted that the "ordinary remand rule" directs that the proper course in most cases is to remand for further proceedings, that benefits should be awarded only in "rare circumstances," and that district courts still have the discretion to remand for further proceedings even when these rare circumstances are present.   Here, while plaintiff has made a cursory assertion that he is entitled to an award of benefits (see Jt Stip at 31), he has completely failed to proffer any argument for an award of benefits in light of the foregoing authorities and made no attempt to show that this case presents the rare circumstances that would warrant departure from the ordinary remand rule.  Accordingly, the Court has decided not to remand for an award of benefits.  See Vasquez, 572 F.3d at 597 (declining to order an immediate payment of benefits where

---

[3]      In Treichler, 2014 WL 7332774, at *17 n.4, the Ninth Circuit also noted that the Supreme Court has not defined what rare circumstances would justify departure from the ordinary remand rule, other than perhaps the presence of evidence that remand for further proceedings would be a mere formality.

neither party presented any argument about the effect of the ALJ's errors, meaning that there were no facts presented that clearly indicated the proper outcome).

Based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here. Accordingly, IT IS HEREBY ORDERED that Judgment be entered reversing the decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.[4]

DATED: January 16, 2015

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE

---

[4]      It is not the Court's intent to limit the scope of the remand.